Raymond and Associates of Illinois. Would both sides approach, please? Good morning. Good morning, Your Honor. We were thinking that 20 minutes per side would be a fair allocation of time. We have a few minutes for rebuttal. And the way that we ordinarily operate is if we're involved in a colloquy and it's interesting, Mr. Reusses knows this, he's been here many times, we will not be real           Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Ma'am, you would start us off when you're ready with what you've been asked to say. Good morning. I'm Kim Janssen and I'm here on behalf of the appellants Brookview and Raymond. I'm here at the Council table with Josh Vinson and Dan McGrath We've raised three challenges to the Good faith finding on appeal. We've challenged the abuse of discretion in finding a preliminary showing. We've challenged the trial judge's determination of the scope of his authority in conducting the hearing. And then we've challenged whether under the totality of the circumstances, under all of the evidence presented, whether the finding of good faith was an abuse of discretion. I think one question we all have is, was there an exercise of discretion here in the court? Judge Hogan was completely candid in admitting that he didn't think that he had the discretion first, to allow the discovery that we were seeking with respect to Jeff Gibson's assets. But more importantly, I think even, to weigh the evidence relative to relative culpability. In a hearing? Exactly. He did say I don't have authority to do this. Exactly. He said, you know, if the appellate court tells me otherwise, I'm more than happy to do so. And we're obviously more than happy to have you tell him otherwise. As to the first two issues, the law is pretty straightforward and we've really already covered the question of the judge's ruling on his scope of discretion. As far as the preliminary showing, the law is pretty clear. You need to show two things, both a legally valid settlement agreement and that the settlement is fair and reasonable, balancing the competing policies of the act, which is not just encouraging settlement but also equitably apportioning the damages. You've seen Jeff Gibson's petition for good faith finding. He made no attempt in that petition to demonstrate an equitable apportionment of damages. In fact, neither in his reply nor even on appeal has he attempted to contend that the damages are equitably apportioned. And looking at the actual facts that we've presented to the court, there really is no way to find an equitable apportionment in this case. And that, I think, is really the heart of the issue on appeal. The evidence in this case involves a young man who was driving his vehicle while under the influence of cannabis, unfortunate fatal accident, killing plaintiff's son. The relative culpability here is really, for all practical purposes, undisputed. Plaintiff does argue in their brief, and Gibson as well, that while maybe Brookview and Raymond had some liability for the supremacist, they didn't raise that argument below so it's waived. But there's really no strength to that argument. Jeff Gibson pled guilty to two felonies for his conduct in driving the vehicle into the pond. He doesn't dispute that. He's bound by judicial estoppel and collateral estoppel. It's fairly clear that he is the primarily culpable defendant. The impact of that, in light of Reedy, is significant. As the court is well aware, 2-1117 provides that a defendant who is less than 25% responsible bears only their fair proportion of the non-medical damages, but under Reedy, if a defendant settles in good faith, they're no longer included in that apportionment default. In this case, therefore, if Jeff Gibson's settlement is in good faith, he won't be included in the apportionment default. We would lose our right to the protection that 1117 offers to a minimally culpable defendant. Let me ask you this, counsel. What is the minimum that a judge can accept in a good faith hearing? Can a judge accept the representation of counsel as an officer of the court that there is no more, all there is is a $300,000 policy, it's been paid out, they're still paying off the debts for his criminal case, and they have nothing besides a house, a car, and... If a lawyer said that in open court or in chambers during a hearing, would that be okay for a judge to accept that and say, I don't need to go any further than that? I don't think so, Your Honor. I think we would be entitled to, in this case, as we requested, to conduct discovery and to explore that and to determine if, in fact, that is the case. For all we know, Jeff Gibson won the lottery sometime before this case, or whatever the facts. We have no idea what his assets are. The only thing we know is the representation of counsel that this exhausts the limits of an insurance policy. So, yeah, I think... So you don't know anything beyond that? No, no, no. There's never been representations made beyond that? No, there have not. There are no assets? No, there have not. In their briefs, both Gibson and the plaintiff have suggested that it's unlikely and implausible that Jeff Gibson would have assets because he's a kid, or was at the time of the accident, an 18-year-old young man. But some 18-year-old young men are quite wealthy and have trust funds and all sorts of assets, so we really don't know. Just to follow up, now, you're not saying that the trial court judge is required to hold a hearing, are you? He's not required to, but it is certainly within his discretion to, which he did not believe it was within his discretion to. And in this case where the plaintiff's entire contention with respect to good faith is that if this is exhausted of his insurance policy and he has no more assets, although he didn't, again, represent that he had no assets, I do think it would be an abuse of discretion to deny that discovery. But you don't have any evidence of any wrongful conduct, collusion, or fraud on the part of the settling parties, do you? Fraud and wrongful conduct might be stretching a little bit. As the Stax court argued and suggested in its analysis pre-Reidy, under the state of the law that we now do have in Reidy, a settlement of this nature under these type of circumstances is inherently collusive because what it does is serves to deprive us of the protection of 2-1117. What it's doing, the motivation for this nominal settlement is to deprive us of the protection of 2-1117 to circumvent that provision of the Contribution Act. And it is clear that a settlement that is, you know, contrary to the provisions of the Contribution Act is not in good faith. The Illinois courts have been pretty clear that equitable apportionment is critical to the assessment of good faith. Johnson v. United Airlines said explicitly that the amount of the settlement must, and they used the word must, must be viewed in relation to the probability of recovery defenses raised and settling parties' potential legal liability. Again, Gibson's potential legal liability is not just potential, it's established as a matter of law. He's raised no defenses in response to this good faith argument. And the probability of recovery has to do with whether or not the plaintiff is likely to win, not what his assets are. So under Johnson v. United Airlines, all of that needs to be considered and weighed. And in this case, the evidence is, again, quite clear that given his liability, given his degree of fault, a $50,000 settlement in a wrongful death case is clearly not in good faith. This court held in fancy that the amount, whether the amount is within a reasonable range of the fair shares of liability is a factor that the court is to consider. And again, the fair shares of liability here, $50,000, is not within a fair range of Mr. Gibson's liability. Plaintiff attacks our position. Counsel, you continue to say that. But that's not the only factor the court is supposed to consider, would you agree? Certainly, there are numerous factors. But you talk as though that's the determining factor. It is not, is it? It's just one of many factors the court should consider. Well, ultimately, the two factors that the court must consider are whether it encourages or only apportions damages among the alleged tort feasors. The court is clear that both of those policies are equally important. And yet, proportionate, the relative share of liability, that goes straight to the heart of equitable apportionment. So it is, indeed, a very critical factor. Certainly, if there were some defenses that Jeff Gibson had that called into question whether or not plaintiff would be able to find him liable, hold him liable, that would be a factor to be considered. He has not raised any defenses. The only argument that they have raised in support of the good faith of the settlement is the exhaustion of the settlement proceeds, arguing that exhaustion is per se evidence of good faith. And there's just, there's simply no authority to support that contention. The plaintiff argues that what we're trying to do is apply a ratio test, and that this ratio test has been rejected by the Illinois courts. But the cases that they cite, Yoder and Johnson v. Belville, are both cases involving post-verdict challenges to a pretrial settlement. And it's clear what they're talking about with respect to a ratio test is trying to That's what the ratio test is. That's not an issue in this case, because we don't have a definite jury verdict. The ratio test recognizes that once a defendant has been allowed out of the case, the whole case changes. What that verdict is going to be might not be what it would have been at the time of settlement. We used to say, in evaluating cases, that there's a difference between settlement value and verdict value, and that's pretty darn clear, I think. Absolutely. So you can't really make that comparison, I don't believe. No. Yeah, equitable apportionment and the ratio test are really two separate things. The ratio test, you know, we're not looking for precision, but equitable apportionment we do need to weigh. But in the seance, the court said we should strike a balance between the public policy favoring settlement and the public policy favoring equitable apportionment. So the trial court has to, as my colleague is saying, sit there and weigh those two things and say, what is reasonable here? I don't want to stop a settlement if there's one that's going forward. It should go forward. On the other hand, it has to be equitable overall to everybody involved. Absolutely. It has to provide a fair and reasonable set-off to the non-settling defendant. Stigler was, you know, right on point to that issue that, you know, if a plaintiff wants to settle for less than what the settling defendant really is liable for, they can do that. They don't get the good faith finding. They can take that lump sum up in front, but the penalty for doing so is that they lose the chance to get the good faith finding. If the court has no further questions. Thank you. Thank you, Counsel. Good morning, Your Honors. Good morning, Mr. Leahy. My name is Tom Leahy, and my co-counsel, Mr. Reeses, will go ahead and address Mr. Gibson's own personal situation in this case. And I'd like to reserve five to seven minutes for Mr. Reeses. Sure. Right off the bat, I'd like to say that there has been a lot of argument, there have been a lot of cases cited, but there really is no authority for what the defendant would like you to hold. For instance, there is no authority in the state of Illinois for the proposition that a defendant who goes ahead and offers the limits of his liability is not entitled to a good faith settlement. There just is no case like that in Illinois. There's no case in Illinois that says that it is not a good faith finding. There cannot be a good faith finding where there is not an evidentiary hearing on the relative culpability of the defendants where the settling defendant has offered its limits of liability. There is nothing like that. But Mr. Leahy, doesn't there have to be some showing on the part of the party moving for the good faith finding that this is a pro rata portion of my fault, represents a pro rata share. You're not, I think, one of the parties in the brief, it's Donald Trump and he's got millions and billions or whatever, whether they're leveraged or not is another matter. But let's say Warren Buffett, let's pick Warren Buffett, Warren Buffett's the party and he's paying his limits. Everybody would say, wait a minute, you're not paying a pro rata share and you have to pay more than that and we know you have it. Wouldn't you agree that that, we would be, it would be an easy case for us if the trial judge said to Mr. Buffett, you can pay your $100,000 limits and that's it, you're done, even though you killed somebody. Sure. Sure. And I agree with the court. On the other hand, it's my professional responsibility to make sure that he's not Warren Buffett or he's not Donald Trump. And this 17-year-old boy who was in high school at the time, who was driving his mother's 1977 whatever, is not Donald Trump. And frankly, when they asked for interrogatories, when they asked, they didn't ask for interrogatories, they just asked for discovery. And the only discovery request that they made was to see whether or not Jeff Gibson was Donald Trump. Well, first of all, it's my responsibility to make sure that we get what we can get. And what Mr. Gibson had was $150,000, actually he had a $300,000 policy, 150 went to the other passenger, 101 to us based upon his parents, when his parents were settled, when we settled out his parents, and then $50,000 came with Mr. Gibson. And with regard to your other question, does the court have some responsibility to go ahead and see this? Yes, the court does, certainly. And I believe that the court did in this particular case. Did the court exercise discretion here? Absolutely, the court exercised discretion. No doubt about that. In what way? Well, what the defendant argues is that he did not even consider the relative culpabilities of the party. I think that that's just totally false. As a matter of fact, if you go ahead and you look at the transcript, I think that what Judge Hogan said was he thought that he would have some difficulty in comparing the two different theories of liability. The one theory was, of course, that Gibson was the driver, and the other theory was that the defendant had created this dangerous condition. Was it negligence theories? Pardon me? One was premises liability, and the other was negligence for the way he operated the automobile, right? Correctly. I mean, it wasn't Wolfram-Watton negligence versus ordinary negligence, was it? No, it wasn't. I thought you alleged ordinary negligence on both. On both parts. And I'm not saying it would be impossible to do. The only reason that I'm mentioning it to you is... It's done all the time. It's done all the time. The only reason I'm mentioning it to you is he was aware of the situation, Judge Hogan was aware of the situation. But it's something that keeps confusing the theories. In fact, he called it products liability, then said, no, it's premises liability. Or someone corrected him and said, no, I mean premises. He said, yeah, I mean premises. Right. But it's ordinary negligence. Those are apples and apples. Absolutely. And then if he said, I don't have the power or the authority to order discovery, I don't have the authority to have an evidentiary hearing, I mean, C&C says, you can have an evidentiary hearing. In fact, go back and have one. The trial court didn't have one and should have had one.  Well, it's inherent. It's inherent. It's inherent. It's inherent. It's inherent. But you have to comply with the statute to say I need to know whether there's money out there. Just as you are obligated. And you're right. You're right. You have an obligation to your client. I assume that this was a warrant of a relative of Warren Buffett's or Donald Trump's. You would have found that out. Absolutely, Your Honor, absolutely. That's why I was asking the original question on counsel. Isn't it true or is it true? I don't know the answer in terms of a case because I think there is no case on this where if a party represents to the court as an officer of the court, which you certainly are, judge, I've looked into it. There is no more money. This is all there is. There's no umbrella policy. There's no excess coverage. There's nothing. This is it. And they don't have a lot of money. And I'm taking what there is available. Is that acceptable for a judge to say then I'm making a fine and good thing? No question about it, Your Honor. I think that the Supreme Court in the Johnson case said that they could accept, that the because in that particular case, the defendant also made a request for an evidentiary hearing. And the court said, and I know it's there, that the court based its finding on the representation of counsel. So yes. That's a discretionary call. I mean, the judge says, in fact, I can tell you. I know I did it. You know, okay, I'm accepting your representation because it's your job to find out what is out there. Absolutely. And it's your job, accepting your representation, and counsel can accept it because then they can go back to their client and say, we have a representation from an officer of the court that this is it. There's no more money out there. And he has an obligation to find out whether there is. And I would say, Your Honor, that my willingness to go ahead and settle for $50,000 against the driver of the car, implicit within that agreement, implicit within that offer, is proof that I'm convinced that there is no other further money there. Okay. But isn't there a difference between a judge saying, I'm accepting their representation that there is no money because it's in their interest to do what they can to find out what's out there, and I'm exercising my discretion to say, on that basis, I have enough information to make a good faith finding. I don't need to have you take discovery. I don't need to have an evidentiary hearing. I'm exercising my discretion in refusing to do that. That's different than saying, I don't have the authority to do it. Well, yes, it is different. No question about it. Did he have the authority to go ahead and ask for an evidentiary hearing on this, that, or the other thing? He probably did have that authority to go ahead and do that. On the other hand, I think you have to go ahead and look at the Johnson opinion. And that is what the Supreme Court has said about this particular issue. And what they have said is that, in Johnson, they saw no purpose in an evidentiary hearing. But, Mr. Leahy, isn't the Johnson case a case where the judge was exercising his discretion? But, in our case, it does not appear so the judge was. I think it's confusing as to whether or not he had any discretion. They're just a little different. They are a little different, Your Honor. I would agree. But I would read that hearing carefully. I would read that transcript carefully. Because when I read it, all I see on page 35 is that he did not believe that he had the discretion to go forward with an evidentiary hearing. I agree with that. That's what he said. He believed he didn't have the discretion to do that. But the defendant takes that a very important step further when the defendant says he did not consider the evidence that he had in front of him. Judge Hogan never said that. He never said that at all. He didn't say, I'm not going to consider anything. I'm not going to go ahead and make my own conclusions on this matter. I think that, to a certain extent, you could say Judge Hogan was a little bit blindsided on this. I mean, remember, there was no motion for an evidentiary hearing. There was no proposed interrogatory or deposition that they wanted to go ahead and take. All they mentioned in the hearing, in the transcript of the hearing, was that they thought that maybe this Jeff Gibson was Donald Trump. And that was it. And then they asked for an evidentiary hearing. And Judge Hogan said, I don't think I have the authority for an evidentiary hearing. Now, does he have the authority for an evidentiary hearing? Conceptually, academically, I wouldn't disagree with you, Your Honor. But I would also say this. I think what he said in there is he's never heard of an evidentiary hearing in Cook County on this. I haven't either. I've been around for 30 years. He's been around just as long. There is no case, no appellate court in the case, that has ever passed on an evidentiary hearing of this sort. I think C&C did. No, well, excuse me. Yeah, I think C&C did. They remanded it for an evidentiary hearing. They remanded it for an evidentiary hearing. Right. And in that particular case, there was a real issue with regard to the apportionment of damages. I believe that there was a $75,000 settlement. And part of it was wrongful death. And part of it was settlement. Part of it was allocation. It was allocation because some of the theories were intentional. Some were negligence. And that's also important because when there is a finding eventually, they have to know how much of it is available for set-off. There is no issue with regard to set-off in this particular case. There is a liquidated amount. And that was never a request. Now, I did see that in C&C. And frankly, that is the only case that I have found in which an evidentiary hearing was requested by the appellate court. And they went ahead in that case, and they differentiated Johnson. Yeah, Johnson, the Supreme Court case. But remember, in that particular case, there was still pending a motion for forum nonconvenience. So we were way, way early in the case. We were way, way, way late in this case. You know, the defendant could hardly claim that they had more evidence that they wanted to put in front of Judge Hogan because they just filed their motion for summary judgment and attached all their affidavits and made all the arguments. I mean, you've seen all the facts of the case. And Judge Hogan was fully aware of all the facts of the case. I think when he talked about product liability, I think he was perhaps talking specifically about the guardrail because there were specific allegations with regard to the guardrail. So could he have? Yes. Does that mean that he didn't exercise his discretion in the case? Absolutely not. And there was no case in Illinois in which there is a finding where a holding where it is not good faith for a defendant to go ahead and offer the limits of its liability, off the limits of its insurance coverage. And I would just suggest to the court, you know, if the court decides to go down that road, there are real consequences to it, obviously. I mean, if you were going to have an evidentiary hearing, the kind that they asked for, and now Ms. Jensen, in her argument, said, well, we don't want precision. We just want an equitable apportionment. What does that mean? Does that mean 60-40? Does that mean 70-30? You know, you get into that sort of evidentiary hearing. There's room for 80-20. 80-20? OK. Then you run into the situation that the appellate court ran into in, or that the trial court ran into in Yoder, where you had settlements beforehand. And then you had the jury that made specific findings with regard to proportions of fault afterwards. So what's to happen if the judge makes his ruling, or her ruling, and then the jury makes its ruling, and they're completely different? As the court said, you know, there's a settlement value, and then there's a verdict value. I would just like to say one other thing with regard to the issue of fault here. And I believe Mr. Reeses is going to talk a little bit about this, too. But, you know, we have heard and we have read that, oh, Mr. Gibson is the one who's really at fault here, and the apartment complex really isn't. Well, 10 or so years before this happened, a person lost his life  and went off that curve at exactly the same spot. They knew that that was a killer pond, that it had the potential to kill. It did kill. It had the potential to kill again. Gibson didn't know that. Gibson was just driving with a couple of friends after school and making a turn on a snowy day. He had no idea what lay beyond that curve. As a matter of fact, I believe in the portion that's quoted in the brief, he said he thought he might scrape his car. Well, that's what Gibson thought, and that's what the consequences would be of him going a few miles over or at the speed limit. The defendant, on the other hand, knew exactly what was the dangers that lurked on the other side of that curve. I will argue that they put up a guardrail and a sign and everything, too. But you're saying that's not enough. And they would. And the car went right through it at, what, the different estimates of speed were 8 to 18 miles an hour. And the guardrail went right through it, and that's really our case. And that's also in the file, how that is not, you don't put up a wood guardrail and you don't put it up in the fashion that you put it up. You get a professional in there to go ahead and do the job right, and if they would have done that, they would have kept the car on the road. Or changed the contour of the road or something like that. Or changed the contour of the road, or changed the slope of the hill, or changed the dynamics of the curb, any of those. So we would ask the Court to go ahead and affirm Judge Hogan's findings. Thank you. Thank you, Mr. Laney. Good morning. May it please the Court, counsel. Again, my name is Mike Rieses, and I'm here today on behalf of the Defendant Appellee, Jeff Gibson. First, the parties made a preliminary showing at the hearing that the settlement was in good faith. The release of record is a legally valid settlement agreement. It was supported by valid consideration in the form of mutual promises by Gibson's insurer, Allstate, to pay $50,000 in exchange for plaintiff's release of Gibson from liability. There is no claim of fraud or collusion, as those terms are typically used in the case law. And there is no term of the settlement that violated the Contribution Act. Now, we've heard a lot today about the question of whether the judge was exercising discretion or believed that he had no discretion. The judge was very familiar with the standard of review, because that standard, abuse of discretion, was set forth in the submissions. The judge did not have to hold an evidentiary hearing. He had a wealth of information available to him. This is a refiled case. It was eight years old at that point. There were depositions of the parties, of the experts. There is no lack of evidence of information available to the judge at the time he made his ruling. I want to go to the transcript, because there has been something said this morning about what the judge was doing. When he said he had no authority, he was talking about two specific arguments that they were making. First, they were talking about how they wanted to have asset discovery, discovery beyond the insurance policy that was available to Jeff Gibson. It was really, I think, his mother's policy, because he was driving her vehicle. Well, we believe that there is no authority for asset discovery beyond the insurance policy. We cited in our brief a case called Manns, M-A-N-N-S, from the Fourth District, which recognizes that under the Supreme Court rules, the only discovery that is allowable before judgment, and when there's no claim of punitive damages, is the insurance policy. Why? Because the insurance policy specifically purchased to satisfy a legal liability. We disclosed the insurance policy. We disclosed the only insurance policy that was available to Jeff Gibson, and we paid the most that was left on the policy in satisfaction or in exchange for a release. Now, the other argument that they made was that they wanted to have an evidentiary hearing, and they wanted to have some determination of fault. And all the judges think, OK, he's saying, first of all, that's contrary to the prevailing practice, which I think everybody knows in this courtroom that it's contrary to the prevailing practice, before reading and after reading. The second thing that he's saying, and I'm going to quote this, if that's going to occur, if that evidentiary hearing, if that mini-trial, if that dress rehearsal for a jury trial is going to occur, then the judge was saying that he was essentially, quote, deciding factual issues. The court was becoming a trier of fact, at least with respect to who is most responsible. We've got a jury demand on this case. The jury's going to decide fault depending upon who's left on the verdict form at the time of trial. All Judge Hogan is saying, and he's a judge of long experience, is that he is not going to be a fact finder. This hearing is to decide whether or not a settlement was in good faith. It's not to decide who's more responsible. It's not to decide who has the ability to pay a judgment. It's not to decide whether the insurance policy is sufficient to satisfy a possible judgment or a probable recovery. That's not the purpose of the hearing. All the judge was doing was he was responding to specific arguments, saying, I can't do asset discovery. That's man's. They never really respond to that case at all. And yes. Let me stop you for a second. Yes. I know you're on a roll, but let me just stop you. Sure. The court is obligated to say, is this a good faith settlement? Correct. Are you paying, to the extent that you can, your pro rata share of fault based upon an equitable apportionment? You don't dispute that, I take it? Well, I don't believe that the judge is supposed to be deciding whether the amount is necessarily equitable. He's simply making a determination. Percentages of fault, I guess, is what equitable apportionment would have to be. Well, we're talking about an equitable apportionment, and we're talking about relative fault. That's one of the policies of the Contribution Act. That is correct. And he has all that information at him. And the reason I'm asking, let me ask you. Yes. I guess, I'll ask you the same question I asked everyone else. What is the minimum? I mean, is it OK to accept the representation of counsel, especially plaintiff's counsel, who has an obligation to find the assets if they're out there, and say, you're representing it to me. You're an officer of the court. I accept that. As far as if that's the most in insurance coverage? Absolutely. Absolutely. Absolutely. And it's not Warren Buffett or someone. It's not someone with millions of dollars. And there's a lot more out there that we could get to if we wanted to. That's right. That's right. And I think under our adversarial system, the law leaves it to the parties to negotiate, and to negotiate at arm's length. This is an arm's length transaction. When counsel says that there's something collusive going on here, there was absolutely no collusion. All that's happening is that all state offers are $50,000. That's the most that's available. The plaintiff has a choice. Mr. Leahy, an experienced trial lawyer, he has a decision to make at that point. He's got a hammer. He doesn't even need the discovery. All he has to say is, you know what, Jeff? I'm not going to let you out of the case unless you give me an affidavit, or unless I have some other satisfaction that you're not Warren Buffett. You're not a, you weren't born with a silver spoon in your mouth, or you didn't win the lottery. He doesn't have to take the money. He can do whatever he needs to do. He doesn't need the discovery. He's got a better tool in his tool chest than discovery. He's got something better than a 213 interrogatory or a 214 production request. He's got a hammer. And he can hold it over Jeff Gibson as long as he wants to. And if he makes a decision based upon his negotiations that that's all there is, a judge doesn't abuse his discretion if the judge says, I'm accepting that representation. In the totality of the circumstances of this case, this settlement was not only legally valid, it was reasonable based upon the totality of the circumstances. Counsel says today, well, we never asserted a defense. Excuse me. We denied that we were the sole proximate cause. We denied we were the sole proximate cause when we filed an answer denying causation. The guilty plea in the criminal case did not preclude us from saying that we weren't 100% at fault. They could be at fault. And if we did have, and there was a guilty plea in the underlying case, it certainly didn't preclude Mr. Leahy from going forward with this case against the owner and the manager of the property. When counsel says that somehow the argument was waived, we're the appellees. We get to argue in defense of Judge Hogan. And we get to argue in defense of Judge Hogan's ruling, based on anything in the record. If there is any waiver rule applicable here, it applies to them as far as their argument that there was a pre-existing duty on the part of Jeff Gibson because of the guilty plea. There was a pre-existing duty according to them. That was never raised by them in the, I'm sorry, the pre-existing duty argument was never raised as a basis to challenge whether or not there was valid consideration to support the settlement. As a matter of fact, there wouldn't have been any duty at all until there was a debt. And there couldn't be a debt until there was either a verdict on which there was judgment or a settlement. And of course, the money has been paid. The trial court had the authority to control its docket. It had the authority to decide how to conduct the hearing. It had the authority to decide to hear the motion for a good faith finding ahead of their motion for partial summary judgment. Judge Hogan properly exercised his discretion. Again, he was not saying that he didn't have the authority He was not saying that he didn't have discretion except with respect to two of their arguments. And he didn't have discretion to force asset discovery from us. And he didn't have the discretion to hold a mini trial and have an act as a fact finder in this case. There was some reference made to Cianci. Totally different situation. In Cianci, the good faith hearing or the settlement was made on the bare pleadings. There was a question also with respect to, and I think this was already brought out, a proper allocation because some of the claims were subject to contribution. Other claims were not. Here, I think it's been pointed out, we've got negligence against us. We've got negligence against them. We're the only defendant. There's nothing to allocate. There's no reason to remand for an allocation because there's nothing to allocate, unlike Cianci. We heard a lot today about how unfair this all is to the non-settling defendants. Look, they are getting the benefit of a set-off to the tune of $150,000. $100,000 from the parents, $50,000 from the settlement on behalf of Jeff Gibson. They also have the sole proximate cause defense. They can get to trial if they want to, and they can argue that Jeff Gibson was the sole proximate cause. We know that from reading. We know that from reading one in the Supreme Court and then remanded for hearing on the sole proximate cause issue. They haven't been prejudiced by this settlement at all. They get to raise whatever defenses they had as far as sole proximate cause. And they'll get the set-off, unlike the Stickler situation. You'll remember in Stickler, there was a workers' compensation liability that was being reduced, and there was a question as to whether or not the non-settling party was really getting a set-off. They're getting the full benefit of the set-off here. When they say that they have some right to several liability in front of the jury, that amounts to no right at all after the Supreme Court decision in reading. If reading had held differently, if reading had held that a settled party was still on the verdict form, I am going to say that this appeal would never have been brought, and we wouldn't be here today. This appeal is nothing more than an attempt by a non-settling party to go around reading by trying to keep a settled party on the verdict form after his settlement with the plaintiff and for the policy limit. On this record, we submit that the trial court knew it had discretion. The parties had argued that in the submissions, the submissions were extensive as far as the testimony of the parties and the witnesses, and we ask you to affirm. Mindful that it's a privilege and not a right to argue before you, we're grateful to be able to appear in front of you today, and we do ask you to affirm for all the reasons set forth in the brief and in our argument. Thank you. Rebuttal, please. Counsel made an argument that what Judge Hogan was saying with respect to his discretion or lack thereof to conduct an evidentiary hearing was really just a statement of the prevailing practice in the circuit court. If, in fact, that's the case, there's all the more reason for this court to let the circuit court know that the prevailing practice is wrong, that the circuit court does have authority to conduct evidentiary hearings. Cianci is not the only case to hold that. Murrow also held that. And Cianci didn't just remand for an evidentiary hearing on allocation. Both Plankton and Gibson continue to overlook the portion of Cianci that says, we're also remanding because there was no evidence before the court from which the court could apportion damages adequately. This quote, it said, court may conduct a limited evidentiary hearing to evaluate the fairness and reasonableness of the settlement amounts and allocations in light of the claims involved. Exactly. With respect to counsel's argument that we never responded to the man's issue in terms of discovery, page six, we responded head on. Man's denied asset discovery in a very different situation. In that situation, all that was before the court was the liability of the parties. It wasn't relevant to that issue. It is incredibly relevant to the issue before this court. With respect to plaintiff's arguments as to Brookview and Raymond's purported liability, those arguments are waived. And waiver is not simply a matter of what was raised in the trial court, but also what was raised here. Plaintiff nor Gibson argued in the trial court anything with respect to our proportion of the liability. Plaintiff did include some evidentiary matters in their reply in support of Jeff Gibson's petition. But that reply was never considered by Judge Hogan. We challenged plaintiff standing to present that reply at the hearing before Judge Hogan. And Judge Hogan said, well, you know what? I've never received it. I'm not considering it anyway. Plaintiff didn't challenge that finding. So really, that issue wasn't even before Judge Hogan. With respect to Jeff Gibson's liability by virtue of his guilty plea, that's waived in the trial court because they didn't argue it. It's also waived in this court because Jeff Gibson didn't argue in this court that the collateral estoppel or judicial estoppel aren't binding on him as a result of that plea. That he might not be 100% approximate cause. It makes no difference in terms of the equitable apportionment. If he's 95% of the approximate cause, then we are injured. Then we have suffered a harm in this case. We have been prejudiced by this finding. And unless the court has further questions, I would ask that you reverse Judge Hogan's ruling. Thank you. Thank you, counsel. The case was very well-briefed, well-argued. And we thank you all for your submissions. And the case will be taken under advisement. Thank you all.